FILED
U.S. DISTRICT COURT
DISTRICT OF KANSAS
2011 DEC -2 PM 3: 14
TIMOTHY M. O'BRIEN
CLERK
BY ________ DEPUTY
KANSAS CITY, KS

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **DAVID D. MORRIS, d/b/a DAVID MORRIS PHOTOGRAPHY** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No.** 11-CV-2655 KHV/DJW |
| **SHERIDAN'S FRANCHISE SYSTEMS, INC. and JAMES SHERIDAN** | ) | |
| **Defendants.** | ) | |

**COMPLAINT**

Plaintiff David D. Morris d/b/a David Morris Photography, for his complaint, states as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff David D. Morris is an individual and sole proprietor of a business doing business as David Morris Photography. Morris' principal place of business is in Kansas City, Missouri. Morris is a commercial photographer.

2. Defendant Sheridan's Franchise Systems, Inc. is on information and belief a Kansas Corporation with a principal place of business at 16012 Metcalf Avenue, Stilwell, Kansas 66085.

3. Upon information and belief, James Sheridan is the President and Chief Executive Officer of Sheridan's Franchise Systems, Inc. (collectively "Sheridan's").

4. Sheridan's owns and/or operates, either directly or through franchisees, restaurants throughout the United States under the name Sheridan's Frozen Custard. Such restaurants are located in Kansas, Missouri, Georgia, Nevada, Washington and other states. Sheridan's provides various printed materials to its restaurant operators/franchisees to promote

both Sheridan's franchise business and the businesses of the individual Sheridan's Frozen Custard restaurants.

5. This is an action for copyright infringement arising under the Copyright Act, 17 U.S.C., § 101 *et seq.*, and for breach of contract and unjust enrichment.

6. This Court has original and exclusive subject matter jurisdiction over the copyright claims in accordance with 28 U.S.C. §§ 1331 and 1338.

7. This Court has subject matter jurisdiction over the breach of contract and unjust enrichment claims under 28 U.S.C. § 1367(a), because these claims form part of the same case or controversy and derive from a common nucleus of operative fact.

8. Venue is proper in this district under 28 U.S.C. §§ 1391(b), (c) and 1400(a).

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

9. In the spring of 2004 Sheridan's contacted Morris and asked him to create a number of photographic images to be used by Sheridan's and its Sheridan's Frozen Custard restaurants. After negotiations as to the scope, cost and license terms, the parties agreed on or about June 8, 2004 that Morris would create approximately 27 photographic images for Sheridan's. These images were intended to be used and were used on menus, advertisements, promotional materials, store interiors, publicity and public relations materials, websites and otherwise, to promote sales and goodwill for Sheridan's restaurants, and to solicit and obtain additional franchisees for Sheridan's.

10. In accordance with the parties' June 8, 2004 agreement, Sheridan's paid $16,700.04 for the photographic images and received a five year license to use such images. As indicated, the parties had previously discussed a more expansive project which would have included a perpetual license. Sheridan's, however, wanted to reduce the cost of the project and

so agreed to reduce the term of the license to five years. The license to use the photographs therefore expired on June 7, 2009.

11. Morris created the 27 photographic images and transferred them to Sheridan's in accordance with the parties' agreement.

12. Thereafter, Sheridan's used those images in connection with and to promote its business as alleged above.

13. On September 15, 2011 Morris registered the photographic images at issue with the United States Copyright Office, Registration No. VA0001789927/2011-09-15.

14. On or about July 15, 2011, Morris saw an article in *USA Today* titled "10 Great Places to Score Stadium Food," which featured Sheridan's Frozen Custard.. Prominently featured in the paper was one of the photographic images created by Morris for Sheridan's in 2004. On information and belief, Sheridan's supplied the image to *USA Today* for use in the article.

15. Morris wrote James Sheridan, reminded him that the license to use the images had expired in 2009, and offered to relicense the images to Sheridan's. Sheridan's received and signed for the letter. According to Mr. Sheridan's assistant, it was delivered to Mr. Sheridan, but Mr. Morris received no response to his letter.

16. Morris then undertook an investigation to see if Sheridan's was using any other images from those taken by Morris for Sheridan's back in 2004. Morris was disappointed to quickly learn that Sheridan's was continuing to use a substantial number of those images in advertising and promotional materials, on Sheridan's and franchisees' websites, on menus, and in restaurants.

17. On or about September 9, 2011, Morris' attorneys sent a letter to Sheridan's demanding compensation for the unauthorized use of the photographs and that Sheridan's immediately cease and desist using the photographic images.

18. In response, James Sheridan contacted Morris and claimed that he had relicensed the images for an additional five years after 2009. Morris checked his records and found no evidence of, nor did he recall, any such renewal. He asked Mr. Sheridan to provide evidence of such a renewal, but Sheridan was unable to find any such evidence.

19. When its claim that the license had been renewed was shown to be untrue, Sheridan's then claimed that it had acquired a perpetual license for the use of the images, relying on a memorandum and a job estimate dated April 19 and 20, 2004.

20. Morris showed Sheridan's that while the original negotiations had contemplated a perpetual license, the cost of the project which had included such a perpetual license would have exceeded $25,000.00, a sum that Sheridan's was not willing to pay. Therefore, Morris and Sheridan's had negotiated the scope and terms of the project, and by the end of April 2004, the parties had agreed that there would be a five year license to use the photographs that resulted from the project. That five-year license was reflected in all documents from late April, 2004 through the agreement dated June 8, 2004.

21. Despite being shown that its excuses for using the images past June, 2004 did not hold water, Sheridan's has refused to acknowledge infringement or to offer any form of compensation to Morris for past infringement or its continuing infringement even after being advised that its right to use the images expired in 2009.

22. Even after being advised of its infringement and unauthorized use of the Morris images, Sheridan's continued to use them on and in connection with its advertising, promotional materials, websites, menus and otherwise at least through the end of October 2011.

23. Further, despite assertions by Sheridan's that it has removed all the photographs taken by Morris from its website and menus, such photographs have continued to be used on franchisees' websites, Facebook pages, and on information and belief, in Sheridan's Frozen Custard restaurants.

**COUNT I**
**COPYRIGHT INFRINGEMENT**

24. Morris alleged and incorporates by reference the allegations and statements set forth in paragraphs 1 through 23 above.

25. Defendants have, individually and jointly, infringed and participated in infringing Morris' copyrighted images by making unauthorized copies of those images and making derivative works of utilizing those images. Those images have been copied and publicly displayed in the manner alleged above.

26. Defendants copying, making derivative works and public display of such works was without the authorization of Morris and thereby infringes on Morris' property rights in violation of 17 U.S.C. § 106.

27. Defendants' infringement of Morris' copyrights and property rights has damaged Morris in an amount yet to be fully determined.

28. Defendants' infringement of Morris' copyrights has yielded defendants profits in an amount thus far not determined, but believed to be in excess of $500,000.00.

**COUNT II**
**BREACH OF CONTRACT**

29. Morris alleges and incorporated by this reference all the statements and allegations set forth in paragraphs 1 through 28 as if fully set forth herein.

30. The invoice/license of rights dated June 8, 2004 constituted an enforceable agreement between Morris and Sheridan's. A material provision of that agreement was that Sheridan's right to use the images would expire after five years, or on June 7, 2009.

31. Defendants have breached the agreement by continuing to use Morris' images beyond the term of the license to promote Sheridan's and its business.

32. As a direct and proximate result of Sheridan's breach of contact, Morris has been damaged in an amount to be proven at trial.

**COUNT III**
**UNJUST ENRICHMENT**

33. Morris restates and alleges the matters contained in the paragraphs 1 through 32 above as if fully set forth herein.

34. At the request of Sheridan's, Morris provided more than 2 dozen images for Sheridan's limited use in connection with Sheridan's business. As stated, permission to use those images expired on June 7, 2009.

35. Sheridan's has continued to use the images, and therefore has continued to enjoy the use and benefit of Morris' work without compensating Morris since June 2009.

36. As evidenced by Sheridan's extensive use of the Morris images, Sheridan's found Morris' images valuable, useful and profitable in promoting Sheridan's business.

37. Sheridan's knew or should have known that Morris would have expected to be paid for any use of the images beyond the original license term, and Morris should have known

that Sheridan's continued use of the images beyond that date conferred a benefit upon Sheridan's which should, in fairness and equity, have resulted in compensation to Morris.

38. Defendants have refused to compensate Morris for such uses, from and after June 8, 2009, and even after being advised in the summer of 2011 that such uses were unlicensed and infringing. Further, instead of admitting its error and offering to compensate Morris, Sheridan's has relied on unsubstantiated and simply untrue assertions to avoid paying Morris.

39. Sheridan's has been unjustly enriched at the expense of Morris, and under the circumstances Sheridan's should be required to pay Morris for the value of his services and the images that have been used for Sheridan's benefit since June 8, 2009.

40. As a result of Sheridan's unjust enrichment, Morris has been damaged in an amount to be proven at trial.

WHEREFORE, Morris prays for judgment as follows:

a. Pursuant to 17 U.S.C. § 502(a), defendants, their agents, employees, successors and assigned, and franchisees and all persons in active concert or participation of any of them, be enjoined from using or further infringing Morris' copyrights in any manner, including but not limited to the copying, display or other use of the copyrighted works and/or by causing or participating in any such copying, display or other use by others;

b. Pursuant to 17 U.S.C. § 503(b), defendants should be required to deliver up for destruction all infringing originals and copies of Morris' copyrighted works, whether in the possession or control of Sheridan's, franchisees or others who received such copies from Sheridan's, and to account for and to account to Morris for any and all such uses;

c. Pursuant to 17 U.S.C. § 504(b), defendants should be required to pay to Morris such actual damages as Morris may have sustained as a result of defendants' infringement;

d. Pursuant to 17 U.S.C. § 504(b), defendants should be required to pay to Morris all profits of Sheridan's attributable to their infringement of Morris' works, and to account for all gains, profits and advantages derived by Sheridan's from their conversion, unjust enrichment and infringement of Morris' copyrighted works;

e. The defendants should be found liable for breach of contract and unjust enrichment and appropriate damages be awarded to Morris; and

f. For such other relief as the Court may deem just and proper.

**JURY TRIAL DEMAND**

Plaintiff Morris requests a trial by jury on all issues properly tried to a jury in this matter.

**DESIGNATION OF PLACE OF TRIAL**

Plaintiff designates the place of trial in this matter be Kansas City, Kansas.

Respectfully submitted,

By: ______________________________

Russell S. Jones, Jr. D. Kan. #70214
Richard P. Stitt KS #14268
POLSINELLI SHUGHART PC
6201 College Blvd., Suite 500
Overland Park, KS 66211
913-451-8788
913-451-6205 (fax)
rstitt@polsinelli.com